# Harris *v.* The State.

### *Indictment for Manslaughter.*

1. *Homicide; no duty to retreat from dwelling.*—No duty rests upon a person to retreat from a room which he has rented and is occupying as a bed room, but he may stand his ground therein and defend himself, even to the death of an assailant who is, or reasonably appears to be, about to kill or inflict grievous bodily harm on him.

2. *Same; defendant's belief in necessity of taking life; reasonable doubt, as to.*—The defendant being under no duty to retreat, and there being no evidence that he was at fault in bringing on the difficulty other than the evidence for the State tending to show that he fired the first shot after the door of his room was opened, the court should charge the jury, as requested in writing by the defendant, that he should not be convicted, if from all the evidence they entertained a reasonable doubt whether the defendant acted upon a well grounded and reasonable belief that it was necessary to shoot and take the life of the deceased to save himself from great bodily harm or from death, or that he shot before such impending necessity arose.

3. *Impeaching witness; charge as to tendency of evidence to impeach.* When there is evidence that a witness has made statements out of court, or on a former investigation of the case, which are inconsistent with his testimony at the trial, it is proper for the court to charge the jury that they have the right to look to this as evidence "tending" to impeach the witness; it not being an invasion of the province of the jury for the court to state the "tendency" of the evidence to impeach.

4. *Appearance of peril to justify taking of life; charge, as to.*—A charge asserting that the "appearance" of peril justifying the taking of life need not be real, is properly refused, as the peril must appear to be real, though it need not be so in fact.

5. *Charge assuming truth of controverted fact.*—A charge which assumes as a fact as to which the evidence is in conflict, or, at least, not free from adverse inferences, is properly refused.

6. *Declarations of party as part of res gestæ.*—In a trial for homicide, declarations of the deceased, made just before he started to the place where he was killed, of his object in going there, are admissible as part of the *res gestæ*.

APPEAL from the Circuit Court of Escambia.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case charged that the defendant, Charles Harris, "unlawfully and intentionally, but without malice, killed Sump Lovelace by shooting him with a pistol." The defendant pleaded not guilty. He was convicted, and appeals.

The evidence introduced by the State tended to show that on the night of the homicide, in October, 1890, the deceased

[Harris v. The State.]

and several of his friends were at his drug store in the town of Brewton ; that they were all drinking, but none of them were drunk ; that the deceased said that one Becky Thomas had stolen his pistol, and that he was going to get it from her ; that he left his store and went to a restaurant kept by Becky Thomas, and on his return to his store, he said that she was not at the restaurant, and that he had been told that she had gone to her house ; that deceased remained at his store until after 12 o'clock at night, and was insisting on going to the house of Becky Thomas, and, upon his friends refusing to go with him, he went alone ; but, without his knowledge, his friends followed him about thirty or forty yards behind ; that the deceased, on reaching the house, knocked on the door and called for Becky Thomas ; that some one on the inside replied that she was not there ; that deceased insisted that the person in the house come out to see him ; this was refused ; and, on the door being opened, several shots were fired, the deceased receiving wounds which produced death. The testimony for the defendant tended to show that he had occupied the house in which the killing occurred for more than two months, having rented it from Becky Thomas, and that she had not lived at the house since the defendant rented it ; that on defendant's refusal to open the door, it was broken open by the person on the outside, who, as soon as the door was opened, fired twice at. the defendant ; that one of the shots struck the defendant, and he fell back on his bed ; that when the defendant fired, the deceased was standing over him with a base-ball bat lifted as if to strike. Against the objections of the defendant, witnesses for the State were allowed to testify that on the night of the killing they heard the deceased say that he had been to Becky Thomas' restaurant and that she was not there, and that he said that he was going down to Becky's house after his pistol. The defendant duly excepted to the admission of this testimony. After one of the witnesses for the State had testified to the circumstances of the killing, the defendant introduced in evidence part of the testimony of this witness as given on the preliminary trial before Judge Leigh, judge of the County Court, and reduced to writing. This evidence was in conflict with the testimony of the witness as given on the trial in the Circuit Court.

Upon the introduction of all the evidence, the defendant requested the court to give the following written charges to the jury, and separately excepted to the court's refusal to give each of them as requested : (1.) "The court charges

the jury that the deceased, Sumpter Lovelace, had no right under the law to redress his own wrongs; and even if he had a pistol stolen from him, and was hunting Becky Thomas, whom he had reason to believe had stolen the pistol, he, Mr. Lovelace, had no right to go to the house of defendant at the dead hour of the night, and break defendant's door, or the fastening of the door, to effect an entrance into the defendant's house." (2.) "If the defendant had the house rented, and was occupying it as his bedroom, at the time of the killing of Lovelace, this is regarded as much the domicile and castle of the defendant as though the defendant owned the house absolutely; and, if the defendant was assaulted in this house, he did not have to retreat, for the defendant had the protection of his house to excuse him from flying, and the law did not require him to fly from his house, and give up the protection of his house to his adversary or adversaries by flight." (3.) "The court charges the jury that the appearances of the danger to loss of life or of great bodily harm, which will justify one in taking human life, need not be actual or real, if they are such as to create in the mind of the slayer the reasonable belief that it is necessary to strike or shoot his assailant in order to save himself from great bodily harm or loss of his own life; and, acting upon this reasonable belief, he strikes or shoots, and death ensues, this would not be manslaughter, but would be justifiable or excusable homicide; and if you believe from all the evidence in the case now before you that the defendant shot and killed the deceased upon the well grounded belief that it was necessary to do so in order to save himself from great bodily harm, or from death, then it is your duty to acquit the defendant." (4.) "In order to arrive at a correct verdict you should look at all the evidence in the case, and that you may solve it properly you are authorized to look at the circumstances, the time of night as shown by the evidence, and the further fact that defendant had gone to bed, if the evidence so shows you, and that his door was broken; and if the evidence further shows you that defendant was shot on the opening of the door, or the defendant had a well grounded belief that his life was ·in danger, or was in imminent peril of having great bodily harm inflicted upon him, then the defendant had the right to shoot, and you should acquit him." (5.) "The court charges the jury that if a witness has come upon the stand and testified to a different state of facts here to what he testified upon the preliminary trial of the defendent had before Judge Leigh, or before the coroner's jury, you

[Harris v. The State.]

have the right to look to this evidence as evidence tending to impeach the witness who 'has made such conflicting statements." (6.) "The court charges the jury that if, after looking at all the evidence in the case, your minds are left in such a state of uncertainly that you cannot say beyond a reasonable doubt whether the defendant acted upon the well grounded and reasonable belief that it was necessary to shoot and take the life of Lovelace to save himself from great bodily harm or from death, or that he shot before such impending necessity arose, then this is such a doubt as will entitle the defendant to an acquittal."

STALLWORTH & BURNETT, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—There was evidence which tended to show that the defendant was assaulted at a late hour of the night in a room which he had rented, and which was occupied by him at the time as a -bed room. There can, of course, be no doubt that the room thus held and occupied was the castle of the defendant, from which no duty to ratreat rested on him, and in which he had the right to stand his ground and defend himself, even to the death of an assailant who is, or reasonably appears to be, about to kill or inflict grievous bodily harm on him. Charge No. 2 requested for the detendant, as we read it, asserts this proposition of law, and should have been given.—Jones v. State, 76 Ala. 8.

The defendant being under no duty to retreat, and ·there being no evidence that he was at fault in bringing on the difficulty, other than by way of inference from that tendency of the State's evidence toward showing that he fired the first shot after the door was opened, he should not have been convicted, if the jury from all the evidence entertained a reasonable "doubt whether he acted upon the well grounded and reasonable belief that it was necessary to shoot and take the life of Lovelace to save himself from great bodily harm or from death, or that he shot before such impending necessity arose." If the jury could not say beyond all reasonable doubt which of these states of fact in reality existed, they could not say with that near approach to certainty which the law requires that he acted under circumstances which did not justify him in taking life ; the onus of proving the circumstances, in so far as they bore upon the question of defendant's fault in bringing on

the difficulty, being on the prosecution. Charge 6 asked for defendant should, therefore, in our opinion, have been given.—*Cleveland v. State*, 86 Ala. 1.

Evidence which goes to show that a witness has made statements out of court, or on a former investigation of the case before the coroner or a committing magistrate, which are inconsistent with his testimony as adduced at the trial, tends as a matter of law to impeach his veracity. This, indeed, is the sole ground upon which such evidence is admissible, and if it involved no such tendency it would not be competent. Notwithstanding such tendency, the jury may still believe the witness. Whether they do or not is a question for them alone. The court can not say to them that the witness is or is not thereby impeached; to do so would be an invasion of their exclusive province. But to charge them merely that certain evidence *tends* to impeachment, or that certain other evidence *tends* to sustain the witness, or that there is evidence tending in both directions, where such is the case, is not an invasion of their prerogatives, and does not take away from them the right to reach any possible conclusion in the premises, but leaves them free to arrive at what they regard as a just result, after considering all the tendencies of the evidence bearing on the point, and adopting some of these tendencies as leading to the real facts, as they find them to be upon the whole evidence. Tested by these principles, charge numbered 5 of defendant's series was not open to the objection that it was invasive of the province of the jury, and its refusal was error.

The remaining charges requested for defendant were faulty, and properly refused. For instance, charges 1 and 4 were bad in that they assumed that defendant's door was "broken open," and that deceased broke open said door, as to which facts the evidence was in conflict or, at least, not free from adverse inferences. Charge 3 is confused and might have misled the jury in that it declares that the *appearance* of imminent peril, &c., need not be real, &c., &c. The *peril* need not be real, but, if not, it must appear to be so, and this appearance must be the real semblance of the situation, the real aspect of affairs which is presented to the defendant, though the situation itself may not in fact be what the semblance represents it to be.

It is inferable from the testimony that the matter of deceased's seeking Becky Thomas for the purpose of recovering a pistol, which he believed she had stolen from him, was discussed between him and his friends throughout the evening

[Green v. The State.]

preceding the homicide, which occurred in the early morning —up to the moment, indeed, when deceased started to the house of the defendant—and that all this time he entertained and expressed the purpose to find her and recover his property. His declarations during the time of this discussion indicative of a purpose to find Becky Thomas, and showing that he had been informed she was at the house of the defendant, were properly allowed to go to the jury as a part of the *res gestæ* of the transaction, tending to explain and give character to his presence and conduct at defendant's house. They were declarations made by one setting out on a journey, or starting to go to a particular place, explanatory of the objects and purposes he had in view in going to the particular place ; and for that purpose were admissible, their weight being a matter for the jury to determine. *Kilgore v. Stanley*, 90 Ala. 523, and authorities there cited.

The other exceptions reserved to the court's rulings on the competency of testimony we deem it unnecessary to discuss. The exceptions are manifestly without merit.

The judgment must be reversed for the errors pointed out above; and the cause will be remanded.

Reversed and remanded.