# Louisville & Nashvile Railroad Co. v. Hurt.

*Action by Employé of a Railroad to Recover Damages for
Personal Injuries.*

1.   *Impeachment of party's own witness; right to refresh his memory.*—
A party can not impeach his own witness by showing that he is un-
worthy of belief, or by proving that he has made contradictory state-
ments, but he may refresh his memory in a proper way; and it is not
error for the court to permit the plaintiff to ask his witness, for the
purpose of refreshing his memory, if he did not testify differently on
a former trial.

2.   *American mortality tables as evidence.*—In an action against, a
railroad company by an employé, to recover damages for personal in-
juries, the American tables of mortality are admissible to show plain-
tiff's expectancy of life.

3.   *Charge as to duties of engineer.*—In an action against a railroad
company by an employé to recover damages for personal injuries, it
was shown that the plaintiff was the engineer on a switch engine; that
under the orders of the assistant yard master, who was his superior,
he was moving a train from the main track; that by reason of the
switch being left open by a brakeman on another train of the defen-
dant, plaintiff's engine left the main track, and collided with an-
other train on a side track. The plaintiff testified that before reach-
ing the switch he saw the safety signal, that he was running between
five and six miles an hour; that when he noticed that the switch was
open, and a collision with the train standing on the side track was
inevitable, by reason of the switch being improperly turned, he re-
versed his engine, sanded the track, and did all he could to avert the
collision.. The brakeman, who left the switch open, testified on be-
half of the defendant that when he first saw the plaintiff's engine,

Vol. 101.

[Louisville & Nashville Railroad Co. v. Hurt.]

after placing the switch, it was only a car length therefrom, that he at once signalled the plaintiff, and started to throw the switch, but did not have time to do so, the plaintiff's engine being run at between sixteen and seventeen miles an hour. *Held*, that a charge, that "if the plaintiff kept the best lookout for switches and obstructions on the track he could, consistent with his other duties to watch the signals and manage the engine, if such other duties were of equal importance, this would not be negligence," though incomplete, is easily understood, when considered in connection with the evidence, is not calculated to mislead, and the giving of it is not error.

4. *Charge as to plaintiff's negligence.*—A charge which instructs the jury that, although the plaintiff was guilty of negligence, "if the jury believe from the evidence that this negligence did not contribute to plaintiff's injury," it will not prevent his recovery, asserts a correct proposition, and is properly given.

5. *Charge as to evidence of brakeman not setting switch.*—A charge, that if the brakeman of defendant who left the switch open, by reason of which the collision occurred resulting in the plaintiff's injury, "knew of plaintiff's peril in time to have prevented the plaintiff's injury, and could have prevented it by using all the means at his command, but negligently failed to apply the means, and if the injury resulted to plaintiff by reason of such failure, this would amount to reckless or wanton conduct, and would entitle the plaintiff to recover, whether the plaintiff was negligent or not, provided plaintiff did all he could to prevent the injury and to save himself from harm, after he became aware of his peril," asserts a correct proposition of law, and is properly given.

6. *Inconsistency in charges given by the court.*—If, at the request of one of the parties to a suit, the court gives a charge which is inconsistent with the general oral charge to the jury, and which is erroneous, the party in whose favor the charge is given can not take advantage of the error to the prejudice of the other party to the suit.

7. *General exception to the oral charge of the court.*—A general exception to the whole of the court's oral charge to the jury is not well taken, if any portion of the oral charge, so excepted to, announces correct propositions of law.

8. *Evidence of reckless, wanton or willful negligence can be introduced in a complaint which avers simple negligence.*—Evidence of reckless, wanton or willful negligence can be introduced on the trial of a cause in which the complaint avers only simple negligence; and whether the evidence thus introduced was sufficient to authorize the plaintiff to recover, notwithstanding he may have been guilty of contributory negligence, is a question for the jury.

9 *Averment of wanton or willful negligence not sustained by proof of simple negligence.*—An averment in the count of a complaint, that the injury complained of was caused by the wanton, reckless or willful negligence of the defendant, is not sustained by evidence of simple negligence; to authorize a recovery under such a count, it is necessary to prove the negligence as averred.

[Louisville & Nashville Railroad Co. v. Hurt.]

10. *Contributory negligence no defense for willful negligence.*—A plea averring that the plaintiff was guilty of negligence which proximately contributed to his injury complained of, presents no defense to a count which alleges that the injuries were inflicted by the wanton, reckless or willful misconduct or negligence of the defendant.

11. *Contradictory statements by party to suit.*—Admissions, which are relevant and material to the issue, made by a party to the suit are always admissible against him; and when the party testifies on a subsequent trial differently from what he did on a former trial, it is competent for the adverse party to give in evidence his statement on the former trial, and it is the duty of the jury to consider both statements in connection with the explanation, if any is made, in the light of all the evidence, to determine which is true.

12. *Charge on a portion of the evidence.*—A charge which singles out any particular part of the evidence and bases a conclusion of law upon it, gives undue prominence to this portion of the evidence, is calculated to mislead the jury, and is properly refused,

13. *Charges ignoring any tendency of the evidence properly refused.*—If in an action to recover damages for personal injuries, there is evidence which tends to show that plaintiff failed to exercise proper preventive effort, after his peril was discovered, a charge which ignores this tendency of the evidence is properly refused.

14. *Refusal of charges which are mere repetition of former charges.*—A court commits no error in refusing charges requested by parties to a suit, which are mere repetitions of charges already given by the court; and a mere variation in the use of words, which in no way change the meaning or assert different principles from those already given, do not compel the giving of such charges.

15. *Impeachment of witness by contradictory statements.*—When it is shown that a witness on his examination makes statements different from those made on a previous examination, these statements only tend to impeach, and when a witness makes an explanation of the different statements, the jury are not authorized to capriciously reject such explanation.

16. *Same.*—Charges which instruct the jury that a contradiction of a witness by himself constitutes an impeachment, and which ignores an explanation by the witness of such contradition, tend to mislead the jury and are properly refused.

17. *Argument of counsel to jury.*—Great latitude must be allowed to counsel in addressing the jury, but his argument should be confined to the evidence before them, and the legitimate inferences to be drawn from that evidence; and when counsel transcends this limit, the court should interfere, on proper objection made, and the failure to do so is a reversible error.

18. *Same; general objection thereto.*—A general objection to statements made by counsel in his argument, some parts of which were authorized by the evidence, is properly overruled; the court not being bound to separate the legal from the illegal.

APPEAL from City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an action on the case brought by the appellee against the appellant; and sought to recover damages for personal injuries alleged to have been suffered by the plaintiff through the negligence of the defendant or its employés, while the plaintiff was in the employ of the defendant as an engineer.

The complaint originally contained but one count; but two others were added by way of amendment. The second count was afterwards withdrawn. The negligence charged in each of the remaining counts was, that of a person in charge of a switch in opening the same and failing to close it, so that the engine upon which the plaintiff was the engineer ran through the switch and collided with a train standing on another track. The last count, which is numbered three, also avers that the employé of the defendant, who was in charge of said switch, after knowledge of the plaintiff's danger, failed to exercise proper diligence to avert it. The defendant filed four pleas, pleading the general issue and contributory negligence; and the plaintiff took issue on each of the four pleas. The facts upon which the case was tried, as shown by the bill of exceptions are as follows:

On July 23, 1890, the plaintiff was in the employ of the defendant as an engineer on a switch engine, and was in the yard of the defendant at Birmingham, Alabama, his duty being to make up trains and distribute cars. The freight train numbered 110 had come in ahead of freight train No. 74, and was standing on the main line of the defendant, the engine having gone to the round house. It was the plaintiff's duty to clear the main line of train 110 before freight train 74 came in; so that No. 74 could occupy the main line. No. 74, however, came in before 110 was switched off the main line. The assistant yard-master of the defendant, who was the plaintiff's superior, gave the signal to plaintiff, to signal the incoming train to stop at the switch at Valley Creek crossing, which was done, and train No. 74 stopped there. The plaintiff then went on the main line with the switch engine, and coupled on to the cars which comprised train 110 for the purpose of taking them off the main line; and then backed down the main line. As the plaintiff was backing his train, and when he had reached

a point on the main line between the A. G. S. crossing and the Valley Creek switch, he was signalled by the assistant yard-master to go on down the main line instead of going on the side track as had been his custom. One Hickerson, who was a brakeman on train 74, and whose duty it was to throw the switch, as soon as his train had stopped, ran to the switch and threw it so as to connect with the north main line instead of the south. This was done but a few minutes before the plaintiff passed with his train intending to go down the south main line as directed by the assistant yard-master, but on account of the switch being thrown by the switchman Hickerson, instead of going down the main line as was directed and intended, his train was diverted to the side track on which freight train 74 was standing, and the two trains collided. Just before the collision, and when the plaintiff saw that it was inevitable, he reversed his engine, sanded the track, and did all that he could do to stop his train, and then leaped from the engine. He fell, his back striking against the switch stand, and he received the injuries for which he now brings this action.

The plaintiff testified that when he got to the A. G. S. crossing he looked at the Valley Creek switch and it showed "white," which was an indication that he could proceed with safety along the main line past that switch. The plaintiff admitted that on the former trial he had testified that he did not look at the Valley Creek switch after leaving 14th Street, and accounted for the conflict of the two statements by stating that "he was weak and nervous on the former trial." He also stated that before reaching the A. G. S. crossing he told his fireman to look back, and his fireman told him all right, to "back up," and that it was after this that the assistant yard-master gave the signal to go on down the south main line so as to clear the switch at Valley Creek. At the time the train went through Valley Creek switch, which resulted in the injury complained of, the plaintiff testified that the train was running between 5 and 6 miles a hour, while the witness Hickerson testified that it was running between 16 and 17 miles an hour.

The switchman Hickerson, who was a witness introduced by the defendant, testified that after he had thrown the switch for the north bound main line, that he first discovered the engine on which the plaintiff was running

when it was only about a car length from the switch, and that this was the first knowledge he had of the switch engine coming up from 14th Street; that as soon as he saw it he signalled to the switch engineer, and started to the switch at the same time to throw it the other way, but that he did not have time to do it. He testified that the last time he noticed the switch engine, just before he saw it a car length from the switch, it was standing at 14th Street, and that after he threw the switch he stood with his back to the north, the direction from which the engine was coming, waiting for the train to come on towards the switch, but he did not hear the engine as it approached because of the noise of the furnaces and mills around where he was standing.

The first assignment of error was based on the court's overruling the defendant's objection to the following question propounded to the witness Will Hill, who had testified that he was the fireman on the engine with the plaintiff at the time of the accident: "Didn't you testify on your former examination that 'I looked back as we were coming to the crossing, I told him to look back, there was a train coming, then I looked back and told him it was all right, and I went down and commenced throwing coal. The switches were all set for the south bound track. I saw they were set for the south bound track when we crossed the A. G. S. crossing, and I could not say that any of those switches were changed after we crossed the A. G. S. crossing?'" The defendant objected to this question because it called for hearsay evidence, and because the defendant could not impeach its own witness. The court overruled the objection, and stated that it would permit the question to be asked and answered for the purpose of refreshing the memory of the witness. To this ruling of the court the defendant duly excepted.

The second, third and fourth assignments of error present the same questions as the above. The sixth assignment of error was the admission, against the appellant's objection and exception, of the American tables of mortality in evidence, to show the plaintiff's expectancy of life. All the other assignments of error are directed to the court's giving and refusing to give several charges asked, and the court's overruling the defendant's motion for a new trial.

The court in its oral charge instructed the jury as follows : "So you will say whether Hurt was guilty of negligence. Taking into consideration the rules of the company, such as were brought to his knowledge, and also the circumstances generally surrounding him, to see whether he ought to have run the train of which he was engineer at a slower rate of speed, or to have stopped it, or to have kept a better lookout, and if you should find that he was negligent in any of these matters, and that his own negligence brought about his own injury, or helped to do it, proximately, then he must not recover, even though the switchman was negligent, unless you believe the act of the switchman was willful, wanton or reckless, not merely negligent—something worse."

"You will consider whether you find that the plaintiff was negligent in failing to keep a lookout, and running his trains too fast across that switch under the circumstances, and you will also consider whether Hickerson was conscious of the danger which threatened the plaintiff by reason of the switch being thrown wrong, and whether being so conscious of it, he could have turned the switch, so as to save the plaintiff, and the plaintiff's train, and prevent the collision, and whether he had time to do it, or whether he willfully and with reckless disregard to the consequences, allowed the switch to remain open, and let the plaintiff's train run into the other train; and in such case, if you find that the plaintiff did what he could to prevent the injury to himself after he saw his danger, he may recover." The defendants separately excepted to each of these portions of the court's oral charge to the jury, and also excepted to the whole of the court's general charge as given.

At the request of the plaintiff, the court gave to the jury the following written charges :. (1.) "If the plaintiff kept the best lookout for switches and obstructions on the track he could, consistent with his other duties to watch for signals and manage the engine, if such other duties were of equal importance, this would not be negligence." (2.) "Although the plaintiff was guilty of negligence in failing to stop his train before crossing the track of the Alabama Great Southern railroad, if the jury believe from the evidence that this negligence did not contribute to plaintiff's injury, it will not disentitle him to recover." (3.) "If Hickerson knew of plaintiff's

peril in time to have prevented the injury, and could have prevented it by the use of the means at his command and negligently failed to apply the means, and if injury resulted to plaintiff by reason of such failure, this would amount to reckless or wanton conduct and would entitle plaintiff to recover whether plaintiff was negligent or not, provided plaintiff did all he could to prevent the accident and save himself from harm after he became aware of his peril." The defendant separately excepted to the giving of each of these charges; and also separately excepted to the court's refusal to give, among others, each of the following written charges requested by it: (5.) "Unless the jury believe that the witness Hickerson was so negligent that his conduct was the legal and moral equivalent of willful or intentional wrong, they must find for the defendant, if they believe that plaintiff was guilty of negligence which proximately contributed to his injury." (8.) "You can not find from the evidence that the defendant or defendant's servants were guilty of reckless, wanton or willful conduct." (17.) "If the jury believe that the plaintiff has contradicted his testimony given on the former trial of this cause in any material particular, they are authorized to consider this as an impeachment of plaintiff's testimony." (21.) "If the jury believes that the plaintiff testified on the former trial of this cause that he didn't see how the switch was after he left 14th Street, and that he testified on this trial that he saw that it was right for the south main line at or about the A. G. S. crossing, they may consider these contradictory statements as an impeachment of the plaintiff." (22.) "If the jury believe that the plaintiff testified on the former trial of this cause that he didn't notice this switch after he left 14th Street, and on this trial that he noticed the condition of the switch at the A. G. S. crossing, the jury are authorized to disregard his testimony entirely, if they believe that he knowingly did so."

Counsel for the plaintiff, in his closing remarks to the jury, said: "I think so far as the witness Will Hill is concerned, that his whole manner relieves me of saying anything about him. I think there is a case for the criminal courts to deal with." The defendant excepted to these remarks, and asked the court to exclude them from the jury, and instruct them to disregard them.

[Louisville & Nashville Railroad Co. v. Hurt.]

The court refused to do this, and the defendant duly excepted. The same counsel also made the following statements in his closing remarks to the jury:    "I asked Dr. Wilson if he had heard of a case where a man got well after his law suit was settled, and he said he never had; and I asked him if he had ever read of any such case, and he said he had in some book in his office.  Didn't I ask him to get that book as soon as he got off the witness stand, and brink it back here, and he has not come back to this hour with that book showing such a case?" The defendant moved the court to exclude these statements from the jury, and to charge them to disregard the same, and duly excepted to the court's refusal to do so.

There was judgment for the p'aintiff, assessing his damages at $3,000.  The defendant appeals; and assigns as error the several rulings of the trial court to which exceptions were reserved.

HEWITT, WALKER & PORTER, for appellant.  (1.) The Tables of Mortality were improperly admitted, because the court takes judicial knowledge of them, and the evidence showed that they were not based on the lives of the class of men to which appellee belonged.— *McDonnell v. Alabama Gold Life Ins. Co.*, 85 Ala. 401; 5 So. Rep. 120; *Highland Ave. & Belt R. R. Co. v. Walters*, 91 Ala. 514, 8 So. Rep. 357.    (2.) The first charge requested by the plaintiff should not have been given.— *Pryor v. L. & N. R. R. Co.*, 90 Ala. 32, 8 So. Rep. 55; *Western Railway v. Lazarus*, 88 Ala. 452, 6 So. Rep. 877; *Ga. Pac. Rwy. Co. v. Propst*, 83 Ala. 518, 3 So. Rep. 764. (3.) The second charge given at the request of the plaintiff was erroneous.—*Taylor v. State*, 48 Ala. 157; *Gilliam v. State*, 50 Ala. 145; *Lyon v. Kent*, 45 Ala. 656; *Northington v. Faber*, 52 Ala. 4'.    (4.) The burden of proof was on plaintiff to show willful, wanton or reckless negligence.—*H. A. & Belt R. R. Co. v. Sampson*, 91 Ala. 560, 8 So. Rep. 778; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240, 8 So. Rep. 243; *Ga. Pac. Railway Co. v. Lee*, 92 Ala. 262, 9 So. Rep. 230; *Carrington v. L. & N. R. R. Co.*, 88 Ala. 472, 6 So. Rep. 910.    (5.) The several charges requested by the defendant should have been given.—*Smith v. State*, 88 Ala. 73, 7 So. Rep. 52; *Ga. Pac. R. R. Co. v. Propst*, 83 Ala. 518, 3 So. Rep. 764;

*Pryor v. L. & N. R. R. Co.*, 90 Ala. 32, 8 So. Rep. 55;
*L. & N. R. R. Co. v. Webb*, 90 Ala. 185, 8 So. Rep. 518;
*L. &. N. R. R. Co. v. Crawford*, 89 Ala, 240, 8 So. Rep.
243; *Ga. Pac. Railway Co. v. Lee*, 92 Ala. 262, 9 So. Rep.
230; *Western Railway Co. v. Lazarus*, 88 Ala. 453, 6 So.
Rep. 877; *Mobile & Girard R. R. Co. v. Caldwell*, 83 Ala.
196, 3 So. Rep. 445; *Smoot v. M. & M. Railway Co.*, 67
Ala. 13; *M. & C. R. R. Co. v. Graham*, 94 Ala. 545, 10
So. Rep. 284; *Farrow v. Andrews*, 69 Ala. 97; *A. G. S. R.
R. Co. v. Frazier*, 93 Ala. 45, 9 So. Rep. 303; *Agnew v.
Walden*, 84 Ala. 503, 4 So. Rep. 672; *C. & W. R. R. Co.
v. Bradford*, 86 Ala. 574, 6 So. Rep. 90; *North Birming-
ham S. R. R. Co. v. Calderwood*, 89 Ala. 247, 7 So.
Rep. 360.

SMITH & LOWE, *contra.*—(1.) Under the facts of the
case, the plaintiff was not guilty of negligence which
contributed proximately to his injury.—*L. &. N. R. R.
Co. v. Hall*, 87 Ala. 708, 6 So. Rep. 277; *A. G. S. R. R.
Co. v. Hawk*, 72 Ala. 112; *A. G. S. R. R. Co. v. Arnold*,
80 Ala. 604–5, 2 So. Rep. 337; *Bunting v. Hogsett*, 23
Amer. St. Rep. 192. (2.) The duty which devolves on the
engineer to keep a constant lookout ahead for obstruc-
tions must be deemed performed when he maintained
the best lookout he could consistent with the perform-
ance of his other duties.—*Western Railway Co. v. Lazarus*,
88 Ala. 453, 6 So. Rep. 877; *Houston Railway Co. v.
Smith*, 13 S. W. Rep. (Tex.) 972; *Howard v. Railway Co.*,
19 Amer. St. 302. (3.) If the plaintiff was guilty of con-
tributory negligence, the question of reckless or wanton
misconduct on the part of the defendant, which would
overcome such contributory negligence was properly
submitted to the jury.

COLEMAN, J.—The action is on the case, brought by
Hurt to recover damages for personal injuries, alleged to
have been sustained by the negligence of the defendant,
while he was in its employment as an engineer.

.The court permitted the plaintiff to ask his own wit-
ness Will Hill, against the objection of the defendant, if
he had not testified on a former trial, as follows: (The
statement is then set out.) The court permitted the
question to be asked for the purpose, as stated, by the
court at the time, to refresh the memory of the witness,
and not for the purpose of impeachment. It is a matter

largely within the discretion of the court, to permit a party to refresh the memory of a witness. The witness answered that he "did not remember." The general rule is, a party can not impeach his own witness, by showing that he is unworthy of belief, or by proving that he has made contradictory statements, but he may refresh his memory in a proper way. This is frequently done by showing the witness a memorandum, and it is permissible to do so, by calling the attention of the witness directly to some particular circumstance or statement. It does not appear that it was used for any other purpose, and in this case, the question elicited no response, unfavorable to the defendant. A party is not held bound by any statement of fact made by his own witness, if he can by other evidence show that in truth the statement was incorrect. The deportment of a witness on the stand, his manner of testifying, may be considered by a jury in weighing his evidence, and is a legitimate subject for argument by either side. A witness may discredit his own testimony by his manner when testifying. There was no error in the ruling of the court, in the several assignments of error, involving this question. The court did not err in admitting the American Tables of Mortality.—*Mary Lee Coal & Rwy. Co. v. Chambliss*, 97 Ala. 171, 11 So. Rep. 897; *Ala. Gold Life Ins. Co. v. McDonnell*, 85 Ala. 401, 5 So. Rep. 120.

A great many assignments of error are based upon the charges given, and the refusal to charge as requested by the defendant. The three charges given for the plaintiff are free from error. The first asserts the proposition, that "if the plaintiff kept the best lookout for switches and obstructions on the track he could, consistent with his other duties to watch for signals and manage the engine, if such other duties were of equal importance, this would not be negligence." The charge is not complete, but considered in connection with the evidence, it is easily understood, was not calculated to mislead and was not abstractly erroneous. The second charge given for plaintiff asserted that negligence on the part of the plaintiff, which did not contribute to his injury, would not prevent a recovery; and the third, asserted the proposition, thoroughly established in this court, that if defendant knew of plaintiff's peril in time to have prevented the injury, and could have prevented it by the use of

means then under its control, and negligently failed to apply the means to prevent the injury, and plaintiff was injured in consequence of such negligence, he would be entitled to recover, notwithstanding plaintiff may have been guilty of negligence, provided plaintiff did all he could to prevent the accident and save himself from harm after he became aware of his peril. Authorities collected in *L. & N. R. R. Co. v. Webb*, 97 Ala. 308, 12 So. Rep. 375.

The portions of the oral charge excepted to involve very much the same principles of law, as those involved in the charges given for the plaintiff, and which have been declared to be free from error. The argument against the oral charge of the court is not insisted upon so much because of any unsoundness in the propositions of law asserted, as for their qualifying effect upon another charge of the court, given at the request of the defendant, after the oral charge was concluded. It is insisted that the ruling of the court is inconsistent in this, that in the oral charge, the court left it with the jury to say, whether there were facts in evidence, which showed that plaintiff was guilty of proximate contributory negligence, and in an affirmative charge the court instructed the jury at the request of the defendant, as a matter of law, "that if the jury believed the evidence, the plaintiff was guilty of negligence which proximately contributed to his injury." We have held that there was no error in the portions of the oral charge excepted to, and if we are correct, and if there is repugnancy in the oral charge and the affirmative charge given at the request of the defendant, it must be that the error lies in the charge given at the request of the defendant. If there was error committed by the court, in favor of the defendant and at his request, the defendant can not take advantage of it to the prejudice of the plaintiff. The statute, section 2754 of the Code, prohibits the court from charging upon the effect of evidence, unless required to do so by one of the parties, and if upon the evidence in this case, the court had charged the jury, *ex mero motu*, that plaintiff was guilty of proximate contributory negligence, and the verdict had been for the defendant, we are not prepared to say it would not have been reversible error. Code, § 2754, and authorities cited in Code. Employés can not be held responsible for the failure to perform one duty, when such failure resulted from the necessary observ-

ance of another, of equal importance and equally binding upon him. Some portions of the oral charge excepted to, that which declared plaintiff's right to recover, although he may have been guilty of contributory negligence, was undoubtedly free from error, and the exception going to the whole, for this additional reason, was not well taken.

Under the written instruction of the court given at request of defendant the jury were required to find, that plaintiff was guilty of proximate contributory negligence. The only issue of fact left open to be ascertained by the jury, under this charge of the court, was whether defendant was guilty of such wanton or willful negligence, or its equivalent, as to authorize a verdict for the plaintiff although he may have been guilty of proximate contributory negligence. In the case of *L. & N. R. R. Co. v. Webb*, 97 Ala. 308, 12 So. Rep. 375, it is said : "We have often held that, if plaintiff's peril was discovered in time to avoid the injury by the exercise of due care on the part of the defendant and the injury was the result of the failure to perform its duty in this respect, plaintiff would be entitled to recover, although he may have been guilty of culpable negligence in the first instance." We further held that, "the practice which prevails in this State authorizes the introduction in evidence of reckless, wanton, or willful negligence, under a complaint which avers only simple negligence ; and a recovery may be had upon such proof, although the evidence may sustain a plea of simple contributory negligence." The authorities are collected in the *Webb Case, supra*.

The first count of the complaint charged simple negligence as distinguished from wanton or willful negligence, or its equivalent, and under the foregoing authorities, it was proper to admit evidence to show that defendant negligently failed to use preventive effort after discovering plaintiff's peril, and that such negligence caused the injury. Whether the evidence was sufficient to authorize the plaintiff to recover under the first count, notwithstanding plaintiff may have been guilty of contributory negligence was properly left to the jury. The gravamen of the third count of the complaint is, that defendant knew of plaintiff's danger, "and could by the exercise of proper diligence have prevented his injuries as aforesaid, which they negligently failed to do." The

negligence, here averred is the equivalent of wanton or willful misconduct. To authorize a recovery under this count, it was necessary to prove the negligence averred. Proof of simple negligence, that is the failure to exercise ordinary care, would not sustain this count of the complaint. A plea to such a count, which avers as a defense that plaintiff was guilty of negligence which proximately contributed to his injury does not present a complete answer, for plaintiff may recover notwithstanding his contributory negligence upon proof that defendant was guilty of wanton or willful injury or such negligence as to be the equivalent of willful or wanton wrong. The plea does not answer the whole complaint.—*A. G. S. R. R. Co. v. Frazier*, 93 Ala. 45, 9 So. Rep. 303; *M. & E. Railway Co. v. Stewart*, 91 Ala. 421, 8 So. Rep. 708; *L. & R. R. Co. v. Watson*, 90 Ala. 68, 8. So. Rep. 249.

Instead of objecting to the plea because of its insufficiency, the plaintiff joined issue upon it. The rule is, that where issue is joined upon an insufficent plea, it becomes an issue to be tried by the jury, and although it may be immaterial, or show no bar to a recovery, the court has no discretion but must receive evidence, if offered, in support of the plea, and if sustained by the proof, the defendant is entitled to have the issue found in his favor.—*Farrow v. Andrews*, 69 Ala. 96; *Agnew, Adm'r. v. Walden & Son*, 84 Ala. 503, 4. So. Rep. 672; *Memphis & Charleston R. R. C. v. Graham*, 94 Ala. 545; 10 So. Rep. 283.

The court, as we have stated, charged the jury at the request of the defendant, as a matter of law, that plaintiff was guilty of negligence, which proximately contributed to his injury. It thus determined that the plea of the defendant to the third count of the complaint was sustained by the proof. Although insufficient as a plea, issue having been joined upon it, and the defendant, as judicially determined by the court, having sustained the plea by uncontroverted evidence, to be consistent, it would appear that the court was bound to charge the jury at the request of the defendant, that the plaintiff could not recover under the third count of the complaint.

We are of opinion the court charged the jury too favorably for the defendant, when it declared, as a matter of law that plaintiff was guilty of contributory negligence. We think under one phase of the evidence, the

jury might have found that plaintiff was not guilty of contributory negligence. If after crossing the Ala. Gr. So. R. R. track, plantiff looked and saw that the switch was properly set, and he received orders from the yard-master to move down the track, and if it was equally incumbent on him to attend to his engine, and watch for signals, and he "kept the best lookout he could for the switches, consistent with his other duties of equal importance," and was also informed by his fireman that the switch was all right, questions of fact to be determined by the jury, a failure on his part to discover and know exactly when the switch was turned, would not, as a matter of law, necessarily amount to contributory negligence. Under the evidence, it was a question for the jury. If, therefore, the court erred in favor of the defendant, in giving the affirmative charge at its request, that plaintiff was guilty of contributory negligence, the error can not be visited upon the plaintiff, if in fact under the evidence, the court ought not to have thus charged the jury. The principle of law decided in the case of *Kansas City, Memphis & Birmingham R. R. Co. v. Sanders*, 98 Ala. 293, is directly in point.

Admissions which are relevant and material to the issue made by a party to a suit, whether made as a witness on the stand or elsewhere, are always admissible against him. He is not concluded by them, unless they induce action, so as to stop him afterwards, but he may explain, or show that in making the statement, he was mistaken. Where a party testifies on a subsequent trial different from that given on a former trial, it is competent for the adverse party to give in evidence his statement on the first trial, and it is the duty of the jury to consider both statements in connection with the explanation, if any is made, in the light of all the evidence, and determine which is true. A charge which singles out any particular part of the evidence and bases a conclusion of law upon it, gives the fact thus emphasized undue prominence, and is calculated to mislead the jury. Such charges generally are argumentative and should be refused. The charges asked by defendant in regard to the former admissions of the plaintiff are faulty in this respect, and the court did not err in refusing them.

Many of the refused charges ignore that phase of the evidence (and there was such evidence by the plaintiff),

which tended to show that defendant failed to exercise proper preventive effort, after plaintiff's peril was discovered. For this reason they were properly refused. We need not specify them. Section 2756 of the Code, which provides that "charges moved for by either party in writing, must be given or refused in the terms in which they are written," was not intended to license either party to move for charges *ad infinitum*. A court will not be in error for refusing charges which are mere repetitions of charges which have been given, and a mere variation in the use of words, which "hideth counsel," and which in no way change the meaning or assert different principles from those given, will not affect the rule. Some of the charges asked are subject to this criticism.

Charge No. 5 refused by the court is of that character. The defendant had received the benefit of the principle of law asserted in this charge in four separate charges, given by the court at the instance of the defendant, and in the oral instructions given by the court. The charge (No. 5) may be subject to the further criticism, that it refers to the jury to determine what is the "legal" equivalent of willful or intentional wrong; but aside from this, it is a mere repetition of instructions which were given to the jury. No possible injury can result to plaintiff by the rule of construction we place upon the statute, for it is now provided that charges "given" are to be. taken out by the jury, while those refused are to be retained by the clerk.—Acts of 1889–90, page 90, amending section 2756 of the Code. It is manifest, then, that the defendant received the benefit of charge No. 5 in the charges given at its request, and was not injured by the refusal of the court to give charge No. 5. .

Charges 17 and 21 are misleading, and also state the proposition in language too strong. When it is shown that statements made by a witness on his examination are different from those made on a previous examination, this is evidence tending to impeachment.—*Harris v. State*, 96 Ala. 24; 11 So. Rep. 255. but when the witness makes an explanation of the different statements, the jury would not be authorized capriciously to reject the explanation. The charges should not have ignored the explanatory evidence. Contradictory statements tend to impeachment, but do not as matter of law

amount to an impeachment. If a statement is intentionally made, the witness knowing at the time it is untrue, a jury would be authorized to reject the testimony of the witness entirely.

We are of opinion that charge 22 is involved and is subject to the same criticism. Leaving off the last phrase of the charge, "if they believe he knowingly did so," there is but little difference, if any, in the principle asserted in this charge and in 17 and 21 *supra*. If the jury believed that on either examination the witness stated that as true which he knew to be untrue, in regard to a material matter, the jury would be authorized to discredit the witness altogether, and it would not be an invasion of their province to so instruct them, but that is not the proposition asserted by the charge. The witness in the case at bar knew at the time of his last examination he had made a different statement on his first examination, and he undertook to account for the difference, and to explain why he made a mistake on his first examination. If the jury were satisfied with the explanation, although they may have believed that the witness knowingly and intentionally testified as he did on his first examination, yet if they believed he made an honest mistake, which he satisfactorily explained, the mere difference of the two statements would not in law justify the court to instruct the jury as requested. The charge as framed ignores the explanatory evidence, and at least was calculated to mislead the jury, and possibly invaded their province. There was no error in refusing it. "Charges should be clear and of easy interpretation." *Hughes v. Anderson*, 68 Ala. 280; *Harmon v. McRea*, 9–1 Ala. 401, 8 So. Rep. 548.

Some part of the statements of counsel to the jury in his closing argument, to which exception was taken, was authorized by the evidence, and the exception going to the entire part, that which was authorized as well as that not justified by the evidence, the court was not bound to separate the legal from the illegal, but was justified in refusing the motion as made.

A fair and satisfactory discussion of the question as to how far counsel can go in the argument of evidence before a jury, without transgressing legitimate limits, may be found in the case of *Mitchum v. The State*, 11 Ga. 615, and *Tucker v. Henniker*, 41 N. H. 317. The doctrine

[Fox v. McDonald.]

is thoroughly established in this State, and its limita·
tions have been judicially fixed. See the following au-
thorities: *Nelson v. Shelby Manf. & Imp. Co.*, 96 Ala. 515,
11 So. Rep. 695; *Lunsford v. Dietrich*, 93 Ala. 565, 9 So.
Rep. 308; *Billingsley v. State*, 96 Ala. 126, 11 So. Rep.
409; *Cross v. State*, 68 Ala. 476; *Jackson v. Robinson*,
93 Ala. 157, 9 So. Rep. 391; *Railroad Co. v. Orr*, 91
Ala. 548, 8 So. Rep. 360.

There is no error in the record, and the case must be
affirmed.