Appellant was convicted of the robbery of Delbert Reeves.
According to the testimony of Reeves, he had been at Saul's Delicatessen from about 9:30 P.M. until about 11:00 P.M. on November 26, 1975. Upon leaving he found that a battery from his car had been stolen, and he started walking toward a friend's house to call a taxi. As he was doing so and had just left the parking lot, an automobile was driven up to where he was walking along Martha Street. In the automobile were the appellant, a man by the name of Charles Joyce, and another person, whose name Reeves said he did not know at the time. He asked for a ride home and was told to get in the automobile. He got in the back seat with the unnamed person, and Joyce drove off with the appellant sitting on the passenger's side of the front seat. After they had traveled about a block and a half, the automobile was pulled over to the curb and stopped.
Reeves further testified that appellant then turned around and shone a flashlight in Reeves' face, told Reeves to give him his billfold, and then hit Reeves about three times; he handed appellant his billfold, which appellant returned after extracting twenty dollars or twenty-two dollars contained therein; one of the other two men in the car snatched Reeves' watch off his arm; twenty-five dollars was also taken from him at the time. He was then told by one of the men in the car to "go back to where you came from, if you know what's good for you." He left, went to a filling station and called the police, who came and took him home, and his wife then took him to a hospital where he spent five days.
Michael R. Jarrell, the other person in the automobile, whose name Reeves did not know, testified as a witness for the State. He said that he got in the back seat of the automobile; that Reeves was on the other side of the back seat at the time; that Joyce was in the driver's seat and appellant was on the right of the front seat; that they drove from the parking lot to the end of Martha Street where the automobile was stopped. Appellant shone a flashlight in Reeves' face, obtained Reeves' billfold, but gave it back to Reeves after taking the money out of it. He said that he did not see appellant hit Reeves, but he heard appellant say that he wanted to throw Reeves off the bridge. *Page 879 
Appellant testified that on the night of November 26, 1975, he rode with Joyce to Saul's; that the car was parked in the Saul's parking lot; that while Joyce was talking to another person, Reeves came up to appellant cursing and swung a tire tool at appellant which mashed his right thumb. He said that he hit Reeves four or five times after Reeves attacked him, but that he did not take any property from Reeves. He said that after hitting Reeves, he ran to the AMVETS Club where he rejoined his girl friend whom he had left at the AMVETS as he and Joyce were going to Saul's.
Appellant complains of the refusal of the following written charges:
 "No. 3. I charge you, members of the jury, that an indictment for robbery also embraces the charge of assault and battery.
 "No. 9. The Court charges the jury that if a witness has come upon the stand and testified to a different state of facts here to what he testified upon the preliminary trial of the defendant had before the Municipal Court, you have the right to look to this evidence as evidence tending to impeach the witness who has made such conflicting statements.
 "No. 10. I charge you, members of the jury, that if you believe that the witness Delbert Reeves has been contradicted in any material part of his testimony, you would be authorized to disbelieve all of his testimony."
Reversible error may not be predicated upon the refusal of a requested written charge which is a mere statement of legal principles without instruction as to its effect upon or application to the issues in the case. Mitchell v. State,38 Ala. App. 546, 89 So.2d 238 (1956); Noah v. State, 38 Ala. App. 531,89 So. 231 (1956); Page v. State, 41 Ala. App. 153,130 So.2d 220, cert. denied, 273 Ala. 5, 130 So.2d 227 (1961); Hudson v.State, Ala.Cr.App., 335 So.2d 208, cert. denied Ala.,335 So.2d 211. Charge 3 is that kind of a charge. Its refusal was not error. In addition, we should note that in no part of the record did defendant request that any principle as to lesser included offenses be applied to the case, and at the conclusion of the court's oral charge defendant announced that he was satisfied. Moreover, as we understand the theories of the respective parties, there was no issue between them as to whether whatever happened between Bullard and Reeves while in an automobile on Martha Street, about a block and a half from the parking lot of Saul's, was a robbery on the one hand or a mere assault and battery on the other. Defendant claimed that an incident happened on the pavement of the parking lot that was an entirely different incident, if it happened, from what Reeves claimed happened in an automobile a block and a half from the parking lot. The principle of the lesser included offense relied upon does not encompass any separate and distinct offense occurring at a different time and place from the offense expressly charged.
As to Charge 9, appellant relies upon Harris v. State, 96 Ala. 24,11 So. 255 (1891) wherein it was held that the refusal of a similar charge was error. The statement of facts in Harris shows:
 ". . . After one of the witnesses for the State had testified to the circumstances of the killing, the defendant introduced in evidence part of the testimony of this witness as given on the preliminary trial before Judge Leigh, judge of the County Court, and reduced to writing. This evidence was in conflict with the testimony of the witness as given on the trial in the Circuit Court."
In the case now before us, the only discrepancy between the testimony of a witness for the State on the trial and his testimony on the preliminary hearing was as to what was testified to by Delbert Reeves that part of the money that was taken from him had been paid to him by one Byron Morrison as part payment on a debt. On cross-examination, he testified that he testified on the preliminary hearing that he did not know who it was that gave him the money. He attempted to explain the discrepancy by saying that when he testified on the preliminary hearing he did not want to get the person named involved. *Page 880 
Without approving the explanation and without attempting to mitigate the discrepancy, we are unable to say that there was a difference or conflict as to a material matter between his testimony on the preliminary hearing and his testimony on the trial. Harris v. State, supra, does not affirmatively show whether the conflict in the testimony of the witness on the trial with his testimony on the preliminary hearing was as to a material matter, but we can hardly doubt that it was for it is only as to a material matter that a witness may be impeached by his contradictory statements theretofore made in court or out of court. The fact that one's testimony discloses that the witness has previously testified differently in some particular does not in and of itself force a conclusion that such difference was as to a material matter. Plainly, this is true when there is no objection to the particular testimony. The trial court was never called upon to pass upon the question whether the discrepancy was as to a material matter, and we are not required to do so. If it was as to an immaterial matter, it did not constitute evidence tending "to impeach the witness" as stated in the charge. Gamble,McElroy's Alabama Evidence, § 156.01 (1) (1977); see also, (3), (4) and (5) for a discussion of authorities as to whether various self-contradictions are as to a material matter.
Our view that the charge that was held to have been erroneously refused in Harris, supra, and that served as a pattern for Charge 9 in the instant case is not a model for charges on the subject of impeachment of a witness by reason of self-contradictory statements, unless perhaps the evidence shows without serious question that the self-contradiction was as to a material matter, as it apparently was in Harris, is strengthened by subsequent cases of the Supreme Court that cite Harris with approval of the opinion therein relative to the particular charge. The cases are:Louisville N.R.R. Co. v. Hurt, 101 Ala. 34, 49, 13 So. 130
(1892); Crawford v. State, 112 Ala. 1, 26, 21 So. 214, 222
(1896); Hale v. State, 122 Ala. 85, 89, 26 So. 236 (1898);Wilkerson v. State, 140 Ala. 165, 168, 37 So. 265 (1904); Parkerv. State, 165 Ala. 1, 51 So. 200 (1909).
In Crawford v. State, it was held:
 "The fact that a witness, out of court, or upon a formal examination, has made statements, as to a material fact, variant from his testimony on the trial, affects his credibility. The extent to which it is affected it is the province of the jury to determine; and it may be proper for the courts so to instruct the jury. The instructions on this point which were requested are faulty in several respects. . . . This instruction is in another respect faulty; it does not predicate that the contrariety of statement was in reference to a material fact. `It is not every contradiction of a witness which has the effect to impeach. The contradiction must be on a material point.' Cauley v. State, 92 Ala. 71, 9 So. 456."
In Hale, supra, the charge held good on the authority of Harris
expressly referred to "contradictory statements as to the material facts in this case or any of such facts."
In Wilkerson, supra, there was no limitation of the self-contradiction to a "material" matter or fact, but the charge held to have been erroneously refused referred to a self-contradiction that was so obviously as to a material fact that it could hardly be considered to be misleading. Wilkerson had been indicted for selling intoxicating liquor; the witness had testified that he had bought liquor from Wilkerson; the self-contradiction was to the effect that he had previously sworn "that he had never bought any liquor from this defendant."
In Parker, supra, Harris, supra, was cited as authority for holding that the jury could take into consideration the testimony of the witnesses as to statements made by the deceased tending to contradict his dying declarations. A further discussion thereof would extend beyond the issues and necessities of the instant case.
In Louisville N.R.R. Co. v. Hurt, supra, it was held:
 "Charges 17 and 21 are misleading, and also state the proposition and language *Page 881 
too strong. When it is shown that statements made by a witness on his examination are different from those made on a previous examination, this is evidence tending to impeachment. Harris v. State, [96 Ala. 24; ] 11 South.Rep. 255;) but when the witness makes an explanation of the different statements the jury would not be authorized capriciously to reject the explanation. The charges should not have ignored the explanatory evidence. Contradictory statements tend to impeachment, but do not, as a matter of law, amount to an impeachment. . . ."
As hereinbefore observed there was an explanation by the witness of the discrepancy between his testimony on the preliminary hearing and his testimony on the trial.
It also seems to us that the particular charge is misleading in the use of the words "different state of facts." As we see it, such a statement could well have been applicable to the facts inHarris, supra, but not in the case now before us. The discrepancy between the testimony of the witness on the preliminary hearing and his hearing on the trial, even if it be considered as testimony as to a material fact, can hardly be properly characterized as testimony "to a different state of facts here to what he testified upon the preliminary trial."
We are of the opinion that the court was not in error in refusing Charge No. 9.
Except for the change in the name of the witness, defendant's Charge No. 10 is identical with Charge 56 in Mills v. State,1 Ala. App. 76, 55 So. 331 (1911), in which it was stated:
 "Charges 56 and 57, requested by the defendant, assert correct propositions, and could have been given. L. N.R.R. Co. v. Seale, 160 Ala. 584, 49 So. 323." (Emphasis supplied).
We do not find authority for holding that the refusal of the charge constitutes reversible error. To so hold would not be in harmony with Hall v. State, 130 Ala. 45, 30 So. 422 (1900), in which it was held as to a similar charge as to the effect of a contradiction of a principal witness:
 "Charge 4 refused to defendant had a tendency to mislead the jury to discard Gage's testimony upon the mere consideration that he had been successfully contradicted as to a material fact when they might have concluded that he testified conscientiously as to that fact and was honestly mistaken as to it. . . ."
The trial court was not in error in refusing Charge No. 10.
Unfortunately, the testimony of the three eye-witnesses to the alleged crime is not clear in some important respects by reason of the large amount of intoxicating liquor they had drunk. Nevertheless, we are in no better position than the jury to penetrate the resultant fog in a search for the truth. The verdict is supported by substantial evidence, which forbids our disturbance of it by reason of any question as to the sufficiency of the evidence.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.