Julian Fred Dixon was charged in separate indictments issued by the Covington County Grand Jury with receiving stolen property in the first degree and receiving stolen property in the second degree. The appellant was found guilty in a consolidated trial and was sentenced to concurrent terms of three years' imprisonment.
The evidence revealed that a burglary occurred at Church Street Elementary School on May 30, 1986. A computer, two disk drives, a printer, and other school supplies, having an aggregate value in excess of $1,000.00, were taken from the school. The testimony also indicated that a burglary occurred at the National Guard Armory in Andalusia on June 22, 1986. Two 10-speed bicycles, drugs and various military supplies valued at between $100.00 and $1,000.00 were taken from the Armory. Investigations in to both burglaries were made by the Andalusia Police Department, and, based upon information supplied to Officer Gary Hutcheson by a confidential informant, a search warrant was obtained for the residence of the appellant, Julian Fred Dixon. On July 3, 1986, Officer Hutcheson, with Investigator Maxwell Hooks of the Covington County Sheriff's Department, executed the search warrant on the appellant's home and in his bedroom found property taken from Church Street Elementary School and property taken from the Armory. At this time, the appellant was given his Miranda rights and was arrested. *Page 961 
At trial, Officer Hutcheson testified that after his arrest on July 3, the appellant made two oral statements to him. In the first statement, which was made at his home, the appellant stated that he obtained the computer from Skip Crenshaw, who lived in Atlanta, Georgia, and that he received the property taken from the Armory from his brother, Charlie Dixon, and a friend, Dickie Howard. The content of the second statement, which was made at the police station, was substantially the same as that of the earlier statement.
Hutcheson testified that on July 7, the appellant gave a written statement which contradicted portions of his earlier statements. Specifically, the appellant said in the written statement that the computer was brought to him by Dickie Howard, who received it from Howard's cousin, Skip Crenshaw. Hutcheson also testified that the appellant told him during a break in the interview that his brother and Dickie Howard had brought property to his home on so many occasions that he believed that the property was stolen.
Another witness for the State, Dickie Howard, testified that he and Charlie Dixon, the appellant's brother, committed the burglary of the National Guard Armory, and that they gave the appellant some of the property taken from the Armory. Howard also testified that he and the appellant committed the burglary of Church Street Elementary School. He also stated that it was the appellant's idea to take the computer, disk drives, and printer, and that he and the appellant transported the property from the school to Howard's home. Howard testified that the appellant carried the computer, disk drives, and printer from Howard's residence to his own home a few hours later.
The appellant, testifying in his own defense, denied taking any property from Church Street Elementary School and denied going to Dickie Howard's home on the evening the school was burglarized. The appellant testified that he first saw the computer when Dickie Howard came to his door carrying a TV monitor screen in one hand and a heavy canvas bag containing the rest of the computer equipment in the other. The appellant testified that Howard told him that the computer belonged to Howard's cousin, and that he was trying to sell the computer. The appellant further testified that on May 30, 1986, the evening the school burglary took place, he was in Orlando, Florida, visiting his mother.
The defense called several other witnesses, who testified that the appellant told them he was thinking about buying a computer which belonged to a relative of a friend of his brother's.
 I.
The appellant contends that the trial court committed reversible error by failing to grant a judgment of acquittal at the end of the State's case on the ground that the evidence was insufficient to sustain a conviction of receiving stolen property in the first degree. The appellant argues that the State's evidence in case 87-15, the burglary of Church Street Elementary School, proved that he, with an accomplice, Dickie Howard, stole the property identified in the indictment, and that he could not, therefore, have been convicted of receiving the property.
The general rule of law in Alabama is that a defendant cannot be convicted of buying and receiving stolen property where he stole the property in question. Ogle v. State, 386 So.2d 493
(Ala.Cr.App. 1980). See also Ex parte Thomas, 445 So.2d 939
(Ala. 1983); Nicholson v. State, 369 So.2d 304 (Ala.Cr.App. 1979). The reason for the rule stems from the logical impossibility for the thief to receive stolen property from himself. Davidson v. State, 360 So.2d 728 (Ala.Cr.App.), cert. denied, 360 So.2d 731 (Ala. 1978). This Court, however, distinguishes Ogle and the other cited cases from the case at bar in that, in each of the cited cases, the State presented conclusive evidence that the defendant had actually stolen the property which he was convicted of receiving.
In the instant case, the State offered conflicting testimony. The jury could either reasonably conclude that the appellant did, in fact, receive the stolen property, or *Page 962 
that the appellant himself helped to steal the property in question. It could be concluded from the testimony of Officer Hutcheson and from the written statement of the appellant offered as evidence by the State that the appellant did not participate in the break-in of the school, but did receive property taken in the burglary. It could also be reasoned from the testimony of Dickie Howard that the appellant aided Howard in taking the computer and other property from the school. Accordingly, the principle of law set forth in Ogle, supra, is inapplicab]e here. As the State's evidence did not conclusively establish that the appellant stole the property which he was convicted of receiving, the State was not precluded from obtaining a conviction against the appellant for receiving stolen property. That the appellant may have stolen the property cannot reasonably be doubted, but there is no definite evidence to that effect. Craig v. State, 375 So.2d 1252
(Ala.Cr.App.), cert. denied, 375 So.2d 1257 (Ala. 1979).
This Court is required to consider the evidence in the light most favorable to the prosecution in reviewing a motion to direct a verdict of acquittal. Dooley v. State, 437 So.2d 1385
(Ala.Cr.App. 1983). The State established a prima facie case of receiving stolen property in the first degree, and the appellant's motion was properly denied.
The appellant also maintains that the trial court erred by failing to grant his requested jury charge number 2, which read as follows:
 "The Court charges that a person cannot be guilty of receiving stolen property which he himself has stolen from the owner."
Although the requested charge is a correct statement of the law, this Court has held on numerous occasions that it is not reversible error to refuse a charge which merely states an abstract principle of law without containing instructions as to the effect such doctrine has on the issues involved in the case. Edwards v. State, 452 So.2d 487, 498 (Ala.Cr.App. 1982), rev'd on other grounds, Ex parte Edwards, 452 So.2d 503 (Ala. 1983); Craig v. State, 389 So.2d 177, 179 (Ala.Cr.App. 1980);Bullard v. State, 369 So.2d 877 (Ala.Cr.App. 1979). Such a charge is abstract, Hudson v. State, 335 So.2d 208
(Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala. 1976), and thus properly refused by the trial court.
The appellant also maintains that the trial court committed reversible error by failing to hold that there was a fatal variance between the charge proven by the State and that contained in the indictment, in that the State's evidence showed that the appellant stole the property he was convicted of receiving. For those reasons previously discussed in this opinion, there is no merit to this argument.
 II.
The appellant contends that the trial court erred by failing to grant his requested jury charge number four or by failing to otherwise instruct the jury that the testimony of an accomplice cannot support a felony conviction without proper corroboration. Appellant's requested jury charge number four reads as follows:
 "The Court charges you that a conviction of a felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Following the trial court's oral charge to the jury, the appellant's counsel objected to the court's failure to give all of appellant's requested jury charges on the grounds that they were accurate propositions of law.
Although appellant's requested jury charge number four was a correct statement of law, it was abstract and not hypothesized on the facts of the case. Pursuant to this Court's holding inEdwards, supra, and Bullard, supra, the court properly refused to grant this requested charge.
 III.
The appellant argues that the trial court erred by permitting the prosecution *Page 963 
to resort to innuendo and by allowing matters outside the evidence to be presented to the jury. Particularly, he cites two instances as error. During the cross-examination of Officer Hutcheson, the following occurred:
"BY MR. STOKES:
 "Q. Gary, I've just got — well, I may have several items. But this inventory and this is a procedure that you do all the time, you write down what you took out of a place, is that right?
"A. Yes, sir.
 "Q. And it is required by law that you make an inventory when you execute a warrant?
"A. Yes, sir.
 "Q. And you are supposed to leave anything off here that you take out of his house?
"A. Yes, sir, not supposed to.
 "Q. All right. So this should be, subject to human error, which is sometimes made . . .
"A. Yes, sir . . .
 "Q. It should be a complete listing of what was found in the house?
"A. Yes, sir.
 "MR. COOK: That pertains to these cases on trial today.
"THE COURT: Yes.
 "MR. STOKES: That carries an implication that there is some other case pending against him and there is not for the Court's information [sic].
"THE COURT: All right.
 "MR. COOK: I predicated by question a while ago so I wouldn't get evidence on that. . . .
 "MR. STOKES: Well, I — that is improper and I object to that and we would like to have the jury instructed to disregard the suggestion that there is some other charge against him, because there is not. None whatsoever. . . ."
During the prosecutor's rebuttal argument, the following exchange occurred:
 "MR. COOK: Now Dickie, he confessed up and told the police everything. He's charged. He is going to be punished.
 "Now, let me tell you what would be a real travesty is for somebody who was involved in this not to be equally punished. Poor little old Dickie who told the officers he did it, he is going to be punished now.
 "MR. STOKES: We object to his making that statement. It is deliberately false. The Howard boy is not charged. Steve Perry, the grandson of C.J. Sullivan is not charged in any of this.
 "MR. COOK: Dickie Howard is most certainly charged. You can ask. . . .
 "MR. STOKES: He is not charged in the Church Street. . . . I object to him saying that. We can go back to Chambers, but that ain't right now.
"THE COURT: Wait a minute. . . .
 "MR. COOK: Let me just say what I'm going to say and we will. . . .
 "THE COURT: Okay. I don't know what we are talking about. Let me say to you this, ladies and gentlemen, to wind this up. It don't make any difference who else is charged or who else isn't or whether they are charged, we are trying this case here. Now, this is the situation, I'll lee [sic] you all — there's been no proof — I mean no testimony about whether anyone charged in. . . .
"MR. STOKES: I understand that. . . .
"THE COURT: . . . . on this docket.
"MR. STOKES: I want to be heard later on this.
"MR. COOK: May I proceed?
"THE COURT: Yeah.
"MR. COOK: Dickie Howard is going to be punished.
 "MR. STOKES: I understood you to say to leave that subject alone. . . .
 "MR. COOK: I'll tell you what, I'll be through in a minute. Dickie Howard is going to be punished. All this smokescreen, hollering and objecting is not going to get around the fact that everybody who participated in this crime needs to be punished. Now, that's where we are on this thing. Somebody who. . . .
"MR. STOKES: That's the National Guard Armory. *Page 964 
 "THE COURT: Oh, I didn't know y'all were talking about two different situations.
 "MR. STOKES: Yes, sir. That is the National Guard Armory.
"THE COURT: All right.
 "MR. COOK: Now, I tried to be real quiet when Mr. Stokes was up here and not interrupt and I would appreciate him returning the favor.
 "(At which time, Mr. Cook continued with and later concluded his final argument to the jury on behalf of the State of Alabama)." (R. 426-430)
The trial court immediately gave the appropriate curative instructions to the jury after the cited comments in order to eradicate any prejudicial effect caused by the comments. "When, as here, a trial court immediately charges the jury to disregard improper remarks, there is a prima facie presumption against error." Brewer v. State, 500 So.2d 482, 484
(Ala.Cr.App. 1986); Woods v. State, 460 So.2d 291, 295
(Ala.Cr.App. 1984).
 IV.
Finally, it is argued that the trial court committed reversible error by refusing to require, pursuant to the rule established in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), the State to turn over to the defendant certain statements made by Steve Perry to the police. The appellant contends that Perry's statements would have necessarily contradicted testimony given by one of the State's witnesses, Dickie Howard, who testified that the appellant actually participated in the Church Street Elementary School burglary. Appellant argues that because such evidence would have contradicted Howard's testimony, it could have affected the outcome of the trial, and that suppression of Perry's statements denied him the right to a fair trial. We disagree.
A violation of the Brady rule occurs when (1) the prosecution suppresses evidence; (2) the evidence is favorable to the defendant or is exculpatory; and (3) the evidence is material.Ex parte Kennedy, 472 So.2d 1106, 1110 (Ala. 1985), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985);United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir. 1983). In United States v. Agurs, 427 U.S. 97, 103-04, 96 S.Ct. 2392,2397-98, 49 L.Ed.2d 342 (1976), the Court stated that the degree of materiality required to overturn a conviction underBrady, supra varies with the circumstances of the particular cases. Where a defendant makes a request for specific Brady
material and the government fails to disclose the materials requested, a court will reverse whenever there is reason to believe that the nondisclosure "might have affected the outcome of the trial." 427 U.S. at 104, 96 S.Ct. at 2398.
In the instant case, the prosecution offered the testimony of Dickie Howard to show that the appellant had knowledge that the computer equipment found in his bedroom was stolen. Officer Hutcheson testified that the appellant told him that he felt the property was stolen because his brother and Dickie Howard were bringing so much of it to the house. This evidence also showed that the appellant knew the property was stolen.
Assuming, arguendo, that Steve Perry's statements would have been wholly contradictory to Dickie Howard's testimony, and that the jury would have therefore found Howard's testimony not to be credible, the outcome of the trial would not have been affected because knowledge was also proved by other testimony.
Accordingly, Steve Perry's statements to the police would not have met the materiality prong of the Kennedy test.
AFFIRMED.
All the Judges concur. *Page 965