The appellant, Ricardo Poole, was convicted of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975, and of receiving stolen property in the first degree, in violation of § 13A-8-17, Code of Alabama 1975. The appellant was sentenced to life imprisonment for the robbery conviction, and to 20 years' imprisonment for the conviction for receiving stolen property.
The record indicates that on the night of the robbery the appellant and four other individuals were travelling in a blue Cadillac automobile, which had been stolen from the Augusta Mall in Augusta, Georgia. In one of his statements to the police, the appellant stated that he had stolen the car from the Augusta Mall and that one of his accomplices had "busted the window," while the appellant "peeled it." The officer who took the appellant's statement testified that the term "peel," meant that the thieves "peel the cast aluminum out from around the steering wheel to start the vehicle."
Thereafter, the appellant, who was travelling in the stolen vehicle with his accomplice and with three other juveniles, drove to the *Page 1082 
Econo Lodge in Pell City, Alabama. One of the passengers, a white female, entered the Econo Lodge, according to one of the appellant's statement, "to see who all was in there." The desk clerk at the Econo Lodge testified that a white female entered and asked about the rates for renting a room. She testified that the female left and that shortly thereafter, two black males entered the Econo Lodge and one of them, who the victim stated was not the appellant, pulled a gun. However, the victim identified the appellant as the other male. The victim testified that the appellant jumped over the counter and attempted to open the money drawer. Finding it locked, the appellant ordered the victim to give him the key. In his statement, the appellant admitted that he opened the money drawer and took the cash. The victim testified that the appellant became very angry when she informed him that there was no more money, other than what was in the drawer. She stated that the appellant told his armed accomplice to shoot and kill her, but the accomplice told the appellant that it was time to leave. She testified that the appellant then jumped back over the counter and told her that, if she moved, they would kill her. She testified that the man with the gun had been wearing a multicolored cap with a large X on the front. She observed the men driving away in a "luxury type" car.
In his statement, the appellant testified that after leaving the Econo Lodge they drove back to the highway, travelling west, and that the female passenger saw a police car following them. Larry Martin, a police officer, testified that he responded to the robbery call and, that after getting a description of the robbers and the car that they were driving, he observed the vehicle travelling on the highway, and attempted to stop it. A chase ensued, and both vehicles wrecked attempting to exit the highway. The appellant and the other occupants of the stolen vehicle jumped from the car and ran into nearby woods. Officer Martin testified that he found a multicolored baseball cap at the scene of the wreck. A search party, using tracking dogs, eventually found the appellant and the other suspects in the woods. Later that afternoon, a .32 caliber revolver was found at the location where the suspects were apprehended. Another officer found $296 in cash on the floorboard of the stolen vehicle. After being taken into custody, the appellant was advised of his Miranda rights and he made two statements, confessing to the offenses.
 I
The appellant argues that he was denied the effective assistance of counsel at trial, because, he says, his counsel failed to locate and subpoena the other individuals who participated in the robbery and in the theft of the automobile, and because his counsel offered the trial court a copy of a letter he wrote to the appellant advising him to accept the State's plea bargain offer.
The record indicates that, before the selection of the jury, the appellant informed the trial court that he wanted a new lawyer, because he believed that his attorney had not properly represented him. He said that his attorney had not spoken to the other individuals who had committed the robbery and the theft of the automobile with him. Thereafter, the following occurred outside the hearing of the jury venire:
 "[Defense counsel]: Judge, I think that one of the things that might be irritating Mr. Poole is I gave Mr. Poole a copy of this letter, and I would file this with the Court. After I reviewed the evidence provided me under the discovery rules, which includes two fairly detailed confessions — one of them is 27 pages in length; one of them is four pages — it appears on the surface that the Miranda warning was given. After the State gave what appeared to be their best offer, I discussed it with Mr. Poole and decided I would put it in a letter form and ask it be filed with the court record. If the State gets all their evidence in, whether I like it or not, there is going to be little doubt that the jury will convict Mr. Poole. As I told Mr. Poole, my job is to do everything I can to represent him, and I will. With those confessions that he apparently made, and if they get into evidence and the jury hears them, and with the eyewitness testimony that identifies him as being there, I don't know what else I can do. *Page 1083 
 "THE COURT: Mr. Poole, who are the witnesses that you wanted him to subpoena?
 "DEFENDANT: Everybody that got caught with me — [names three of the juveniles] — all the people that got caught the same night that I did.
 "[Prosecutor]: Judge, all the codefendants that were arrested with Mr. Poole on the night in question were juvenile offenders who were on escape from a juvenile facility in the State of Georgia. To my knowledge, they were all returned there.
 "[Defense counsel]: The only one that Mr. Poole asked me to locate was Tracey. I couldn't find her. I was told she was somewhere in Georgia.
 "[Prosecutor]: They might could be located, but they are outside the subpoena power.
 "THE COURT: They would be outside the jurisdiction of this court. Now, because he didn't do this, you want a new attorney in this case?
"DEFENDANT: Yes, sir.
 "THE COURT: The Court having considered that, it is overruled and denied, and we will proceed with the trial at this time."
The appellant again raised the matter of the ineffectiveness of his trial counsel in a motion for new trial, and a hearing was held on that motion. At the hearing, the appellant argued that the witness would have testified that the appellant was not a willing participant in the crime. However, the appellant's confessions indicated his willingness, as did the victim's testimony concerning the appellant's threats. In denying the motion for a new trial, the trial court stated that the attorney's decision not to call the accomplice witness was a tactical one and did not constitute ineffective assistance of counsel. The trial court stated:
 "This is particularly true in light of the fact that the defendant's counsel was attempting to exclude from the hearing of the jury the fact that the defendant and those accomplices had escaped from a juvenile detention facility and had committed a motel robbery in Oxford, Alabama, only hours before the motel robbery charged in this indictment. Presentation of these same individuals as witnesses would have presented for the jury the same information the defendant's attorney was able to exclude in his motion in limine."
Defense counsel's decision not to call the witness was a reasonable professional judgment related to trial strategy, and there has been no showing of a reasonable probability that, but for this decision, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694,104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). See also Johnson v.State, 557 So.2d 1337, 1339 (Ala.Cr.App. 1990).
The appellant also argues that his counsel was ineffective in providing the trial court with a copy of the letter he wrote to the appellant, advising him to accept the State's offer of 40 years' imprisonment in exchange for his guilty plea, in light of the evidence. Defense counsel had advised him that if he did go to trial, he would most likely be convicted and sentenced to life imprisonment plus 20 years. This letter was never offered as evidence for the jury to consider, but was shown to the trial judge and was made a part of the record, to explain why the appellant was requesting a new lawyer. The appellant, against his counsel's advice, went to trial and received a sentence of life imprisonment for the robbery conviction, plus 20 years' imprisonment for the conviction for receiving stolen property, as defense counsel predicted. In light of the fact that the letter was never presented to the jury, the appellant has failed to show that, but for his counsel's actions, the result of the proceeding would have been different. SeeStrickland v. Washington, supra. Thus, the appellant has failed to prove that he was denied the effective assistance of counsel.
 II
The appellant argues that he was improperly convicted of receiving stolen property in the first degree, because, he says, the State failed to present sufficient evidence to support this conviction. The record indicates that, at the close of the State's evidence, defense counsel moved for a judgment of acquittal as to both charges. The trial court *Page 1084 
denied the motion. Thereafter, defense counsel moved for a judgment of acquittal as to the charge of receiving stolen property count, stating specifically that the State had failed to prove that the appellant had the requisite knowledge that the automobile was stolen. This matter was therefore sufficiently presented to the trial court and was preserved for appeal.
The appellant argues that he was improperly convicted of receiving stolen property in the first degree because, he says, the evidence at trial established that he actually participated in the theft of the vehicle and, therefore, that he could not be convicted of receiving stolen property. The State argues that that principle is not applicable to these facts, citing cases where the evidence concerning the theft was at least somewhat disputed. See Mills v. State, 581 So.2d 1126, 1127-28
(Ala.Cr.App. 1987); Sankey v. State, 568 So.2d 366, 369-370
(Ala.Cr.App. 1990). However, in this case, the only evidence concerning the theft of the automobile was the appellant's confession, introduced as a State's exhibit, as well as the testimony of the investigating officer to the effect that the appellant participated in the theft. The appellant never refuted the evidence that he had committed the theft and no evidence to the contrary was introduced. On appeal, the State argues that the appellant was charged with receiving stolen property because "[t]he State of Alabama cannot punish Appellant for a crime he committed in another state; however, the State can define and punish crimes within the limits of Alabama. It is not the theft of the car in Georgia that the appellant is being punished for in Alabama, but it is, instead, the bringing of stolen property into this State." The State cites Karr v. State, 491 So.2d 1073 (Ala.Cr.App. 1986), for authority for this proposition. However, in Karr, although the evidence indicated that the property was stolen in Mississippi, the evidence was clear that a third party stole the property and sold the stolen property to the defendant in Mississippi before the defendant brought it into Alabama. This court, inKarr, held that "it is not necessary to prove the taking was unlawful under the law of the state where the property was taken, only that it was unlawful under Alabama law." Id. at 1075. Thus, the situation in Karr was different from the present case, in that it was undisputed that the defendant received the stolen property, rather than committed the theft, in another state before bringing it into Alabama. Section13A-8-20, Code of Alabama 1975, deals with situations where individuals bring stolen property into the State of Alabama. Under this statute, such individuals are charged as principles in the theft. However, the appellant was not charged with violating this Code section. See 67 A.L.R.2d 752.
"Where the evidence is undisputed that the appellant committed the theft, he cannot be convicted of receiving the same stolen property from that theft." Mills v. State, supra, at 1127. See also Gallman v. State, 29 Ala. App. 264,195 So. 768 (1940) (wherein this court held that the defendant could not be convicted of buying, receiving, or concealing stolen property, where the evidence tended to show that the defendant came into the possession of the property described in the indictment solely through burglarizing of a house). See also 136 A.L.R. 1088. In Ex parte Thomas, 445 So.2d 939 (Ala. 1983), the Alabama Supreme Court held that the defendant could not be convicted of receiving stolen property where the evidence that he obtained the stolen property by burglarizing a house was undisputed. The court stated:
 "The undisputed testimony here is: that a house was burglarized and a television set stolen; that the defendant admitted that he broke into the house, took a television set, and transported it to his house; and that the stolen television set was found in his house. On the basis of these facts and the foregoing discussion, we hold that the defendant cannot be convicted of receiving stolen property."
Id. at 941.
Similarly, in the present case, the evidence is undisputed that the appellant committed the theft of the automobile in Georgia. He confessed to that theft, was observed in possession of the stolen property, and was apprehended in close proximity to the stolen vehicle. Under these facts, the appellant should not have been convicted of the offense *Page 1085 
of receiving stolen property. Thus, the appellant's conviction for receiving stolen property is due to be reversed and a judgment rendered in his favor on that charge.
AFFIRMED AS TO THE CONVICTION OF ROBBERY IN THE FIRST DEGREE; REVERSED AND JUDGMENT RENDERED AS TO THE CONVICTION FOR RECEIVING STOLEN PROPERTY.
All Judges concur.