[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1176 
The appellant, Marc Lee Stoinski, was convicted of two counts of first-degree theft of property, a violation of §13A-8-3, Ala Code 1975, and one count of receiving stolen property in the first degree, a violation of § 13A-8-17, Ala. Code 1975.[1] He was sentenced to 10 years' imprisonment for each conviction, with the sentences to run consecutively. However, pursuant to the Split Sentence Act, § 15-18-8, Ala. Code 1975, Stoinski's sentence as to one of the first-degree-theft convictions was suspended, and he was ordered to serve six months in the county jail, followed by five years of supervised probation. The court indicated that it would revisit its sentences as to the other first-degree-theft conviction and the receiving-stolen-property conviction at a later time. Stoinski was also ordered to pay $50 to the crime victims compensation fund, restitution, and attorney fees.
The evidence adduced at trial established that Lt. Byron Douglas Wade of the Tuscaloosa County Sheriff's Department participated in an investigation involving numerous thefts of tractors, trailers, trucks, and four-wheeled all-terrain vehicles. A tip from an anonymous source led the investigators to a residence in Cottondale. A person at the residence gave them the name of Michael Kimbrough as a person who was involved in the thefts.
Investigators interviewed Kimbrough, who supplied the name of Larry Spencer as someone who might be involved in the thefts. Investigators interviewed Spencer and obtained information that led to the recovery of a four-wheel-drive Kubota brand tractor in Perry County, along with other equipment, which was returned to the owner. Lt. Wade testified that a stolen box blade was recovered from the property of Roger Miller. In an interview with Kristal Barger, Kimbrough's girlfriend, Lt. Wade was given Stoinski's name as an accomplice in the thefts.
Michael Kimbrough testified for the State pursuant to a plea agreement in which he had pleaded guilty to 7 felony charges and received a sentence of 18 years' imprisonment, no probation, the *Page 1177 
State agreeing not to oppose his parole. He testified that he and Stoinski stole a Kubota brand tractor from ARC Rental Service in Tuscaloosa County. He stated that he met Stoinski in Stoinski's driveway on the evening of the theft. A short time later, Barger arrived and the three of them drove in Stoinski's truck to ARC Rental Service. Kimbrough testified that Barger was intoxicated from alcohol and methamphetamine at the time, that she had nothing to do with the theft, and that she was just riding with them. Kimbrough testified that Barger did not participate in the thefts and that she received no monetary gain from the sale of the stolen equipment.
Kimbrough testified that he, Barger, and Stoinski arrived at ARC Rental Center around midnight. He and Stoinski then hooked up a Kubota brand tractor to the back of Stoinski's truck and drove the tractor to the property of an individual named Roger Miller in Shelby County. According to Kimbrough, Larry Spencer paid him approximately $2,500 for the tractor the next afternoon. Kimbrough gave Stoinski approximately $750 of that money.
Within a few days, Larry Spencer contacted Kimbrough about stealing another Kubota brand tractor because Roger Miller had wanted one with four-wheel drive rather than the two-wheel drive tractor that they had stolen. Kimbrough drove around until he located such a tractor at a worksite at Townsend Ford, a Ford automobile dealership in Tuscaloosa. Kimbrough wrote down the model number and gave this information to Larry Spencer; Larry Spencer called Kimbrough and confirmed that the tractor Kimbrough had located was the model Roger Miller wanted.
Kimbrough testified that Stoinski came to his apartment around midnight that same night and the two men proceeded to Townsend Ford in Kimbrough's truck to steal the tractor. Stoinski "hot-wired" the tractor, started it, and Kimbrough drove the tractor onto the equipment trailer attached to his truck. Stoinski then held the brake down on the truck to stabilize it while Kimbrough drove the tractor onto the bed of the trailer. The two men then delivered the tractor to Roger Miller's land in Shelby County and left it there.
Kimbrough testified that Larry Spencer paid him $1,500 for the second tractor. He gave $750 of the money to Stoinski. Because Kimbrough was expecting Spencer to pay substantially more money for the second tractor, Kimbrough decided to "repossess" the stolen tractor from Miller's property. Kimbrough and another individual took the second tractor to C S Fabrication in Moundville and sold it to a man who owned a farm in Perry County.
Barger testified that, on the evening of the first tractor theft, a friend dropped her off at Stoinski's house. Barger talked to Kimbrough and Stoinski for awhile and then rode with them in Stoinski's truck to ARC Rental Center. Although she had taken the antidepressant Xanax that night, she remembered Kimbrough and Stoinski attaching an equipment trailer to the truck to transport a tractor and that they then drove to the community of Greenpond. Barger testified that Kimbrough located a hidden key and unlocked the gate to the property; they unloaded the tractor and then drove back to Tuscaloosa. Barger also testified that she was with Kimbrough when he went to check out the tractor on the work site at Townsend Ford. She stated that, at Kimbrough's apartment, she overheard a conversation between Kimbrough and Stoinski regarding stealing some equipment from Townsend Ford and taking it back to Greenpond. At the conclusion *Page 1178 
of that conversation, Kimbrough and Stoinski left the apartment.
Barger stated that she gave Stoinski's name to law-enforcement officers as a suspect. She also testified that Larry Spencer was paying Kimbrough for the tractors.
Larry Spencer testified that he was acquainted with Roger Miller. Spencer had provided some four-wheel all-terrain vehicles to Miller in the past. Miller approached Spencer and told him that he was interested in a Kubota brand tractor. Because Spencer knew that Kimbrough was stealing tractors, he offered to introduce Miller to Kimbrough. Spencer stated that he knew Stoinski because they lived near each other, but that he did not know that Stoinski was involved in stealing the tractors. Spencer claimed that he paid Kimbrough between $2,300 and $2,500 for the first tractor, and $2,500 for the second tractor.[2]
Pursuant to a negotiated plea agreement, Miller testified that he was acquainted with Larry Spencer. Miller had asked Spencer to locate a Kubota brand tractor for him, and Spencer agreed to do so. The first tractor Spencer provided was two-wheel drive and too small for Miller's needs; Miller told Spencer that he wanted a larger, four-wheel drive tractor. Miller testified that both tractors were taken to and left on his property in Shelby County, but that he had instructed Spencer that the two-wheel drive tractor was not the model he wanted. Miller stated that he did not know Stoinski.
Phillip Hudson, owner of Renovations Plus, stated that his tractor was stolen from a job site at Townsend Ford. He described the tractor as a used Kubota brand tractor for which he had paid $15,000. Hudson testified that his insurer paid only $11,000 for his loss claim and that he had had to spend $19,000 to replace the tractor. Rick Price, owner of ARC Rental Center, testified that the following items were stolen from his place of business: a two-wheel drive Kubota brand tractor, a box blade, a post-hole digger, a Bush Hog brand mowing machine, and a 16-foot equipment trailer. Price estimated the value of the tractor was approximately $11,000 to $12,000 and the value of the remaining items was approximately $1,500.
At the close of all of the evidence, the jury returned a verdict finding Stoinski guilty of two counts of first-degree theft of property and two counts of first-degree receiving stolen property. However, the trial court subsequently set aside one of the convictions for first-degree receiving stolen property on the ground that the conviction was based on uncorroborated accomplice testimony.
 I.
Count I of the multi-count indictment against Stoinski charged him with receiving stolen property in the first degree in regard to a Kubota brand tractor, a 16-foot trailer, a post-hole digger, a box blade, and a Bush Hog brand mowing machine, all owned by ARC; Count III of the indictment charged Stoinski with theft of property in the first degree in regard to the same property. Both counts were submitted to the jury for its determination. The jury returned a verdict finding Stoinski guilty of both counts.
Stoinski argues that the trial court erred when it allowed both convictions to stand. Stoinski further argues that it was improper for the trial court to submit both charges to the jury. *Page 1179 
With regard to the offense of receiving stolen property, §13A-8-16(a), Ala. Code 1975, provides:
 "A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner."
Generally, under Alabama law a person may not be convicted of receiving stolen property and theft of property as to the same property. As the Alabama Supreme Court held in Ex parteHoward, 710 So.2d 460 (Ala. 1997):
 "Alabama has a firmly established rule of law recognizing that a person cannot be convicted of buying and receiving stolen property if that person actually stole the property in question. Ex
parte Thomas, 445 So.2d 939 (Ala. 1983); Scott v. State, 374 So.2d 316 (Ala. 1979); Wasp v. State, 647 So.2d 81, 83
(Ala.Crim.App. 1994); Dixon v. State, 536 So.2d 959, 961 (Ala.Crim.App. 1988); Ogle v. State, 386 So.2d 493 (Ala.Crim.App. 1980); Nicholson v. State, 369 So.2d 304
(Ala.Crim.App. 1979). Where it is undisputed that a person stole property, that person may not be convicted of receiving or concealing the same property. See Poole v. State, 651 So.2d 1081, 1083-84 (Ala.Crim.App. 1994); George v. State, 410 So.2d 476 (Ala.Crim.App. 1982); Ex parte Wilcox, 401 So.2d 794, 795 (Ala. 1981). Thus, if it is established, as a matter of factual adjudication, that a person is guilty of receiving stolen property, then it is a `logical impossibility' that the defendant also stole the property in question. See Ogle v. State, supra, at 494."
710 So.2d at 463-64. Accord Brown v. State,821 So.2d 219, 226 (Ala.Crim.App. 2000).
This case, however, is factually distinguishable from Exparte Howard. In Ex parte Howard, the defendant had been convicted of stealing and retaining the same property. By contrast, Stoinski was convicted of stealing anddisposing of the same property. Thus, this case is more akin to the facts of Smith v. State,739 So.2d 545 (Ala.Crim.App. 1999), in which this Court upheld both convictions.
In Smith, the defendant was convicted of theft of property in Georgia after stealing a leaf blower in Georgia; the defendant was subsequently convicted of receiving stolen property in Alabama because he pawned the leaf blower at an Alabama pawnshop. On appeal, Smith argued that he could not be convicted of receiving stolen property because he had already been convicted of stealing that same property in Georgia. Therefore, he argued, he could not be convicted of both stealing and receiving the same property. Rejecting Smith's argument, this Court stated:
 "We have found no Alabama case in which the precise issue now before us has been addressed. However, applying the rules of statutory construction and considering the purposes of the Criminal Code as well as the plain language of § 13A-8-16, Ala. Code 1975, we hold that, even when the evidence shows that the defendant stole the property he or she is subsequently charged with `receiving,' a conviction for `receiving' that stolen property is not prohibited if the evidence shows that the defendant disposed of the property, as opposed to merely receiving or retaining it. By setting forth the types of proscribed conduct in the alternative with the word `or,' a reasonable interpretation of *Page 1180 
§ 13A-8-16 is that receiving stolen property, retaining stolen property, and disposing of stolen property are `separate offenses.'
"The cases have stated that it is a `logical impossibility' for a person who stole property to also receive that same property, because a person cannot receive property from himself. SeeEx parte Howard, 710 So.2d 460, 463-64 (Ala. 1997), and the cases cited therein. See also Scott v. State,374 So.2d 316, 318 (Ala. 1979) (quoting, in pertinent part, 76 C.J.S. § 14(b), `where one steals goods under such circumstances that the receiving thereof is a part of the theft itself, he cannot be convicted of receiving the stolen goods'). There is nothing logically impossible about a person stealing property and then disposing of that same property because those are separate and distinct courses of conduct.
"Therefore, we hold that a person who steals property may be convicted of receiving that same stolen property, under §13A-8-16, Ala. Code 1975, if the evidence shows that hedisposed of the property.
 "We use the term `receiving' here to mean the general offense proscribed by § 13A-8-16(a) and not one of the three prohibited courses of conduct set out in that statute."
Smith v. State, 739 So.2d at 548 (emphasis supplied).
Here, the evidence established that Stoinski and Kimbrough stole the property in question from ARC Rental Center, then took the property and left it on Roger Miller's property. Thereafter, Larry Spencer paid Kimbrough $2,500 for the property; Kimbrough gave Stoinski approximately $750 of that money. Accordingly, unlike the convictions in Ex parteHoward, Stoinski's convictions were not based on the fact that he stole and retained ARC's property. Rather, the convictions were based on the fact that he stole ARC's property and subsequently disposed of the property. Based on this Court's holding in Smith v. State, Stoinski was properly convicted of both first-degree theft of property and first-degree receiving stolen property with regard to the property stolen from ARC. Because Stoinski could be convicted of both charges, Stoinski's claim that the State should have been required to elect which charge to submit to the jury is without merit. Accordingly, the trial court did not err in submitting both charges to the jury for its determination.
 II.
Stoinski also argues that the trial court erred when it denied his motions for a judgment of acquittal and allowed the issue of his guilt to go to the jury. Specifically, he argues that the State failed to present a prima facie case proving two counts of theft of property in the first degree because the only testimony connecting him to the thefts came from accomplices and/or conspirators without any corroborating evidence. Our review of the record reveals that the State presented ample evidence to prove that Stoinski had committed each element of the offense of first-degree theft of property and sufficiently corroborated the accomplice testimony presented at trial. Thus, the trial court did not err when it denied Stoinski's motions for judgment of acquittal.
 "`"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v. State, 471 So.2d 485, 488 *Page 1181 
(Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So.2d 497, 498
(Ala.Crim.App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App. 1992). `"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."' Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850
(Ala.Crim.App. 1990). `The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally
sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978).
 "`When reviewing a trial court's denial of a motion for a judgment of acquittal, this court must determine "whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty."' McCart v. State, 765 So.2d 21, 27
(Ala.Crim.App. 1999), quoting Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App. 1993). See also Ex parte Fitkin, 781 So.2d 182, 183
(Ala. 2000) (`The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there was legal evidence before the court at the time the motion was made from which, by fair inference, the defendant could be found guilty.')."
Ingram v. State, 878 So.2d 1208, 1210-11
(Ala.Crim.App. 2003). Also, any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [goes] to the weight of the evidence and create[s a] question of fact to be resolved by the jury." Rowell v.State, 647 So.2d 67, 69-70 (Ala.Crim.App. 1994). "`"[T]he credibility of witnesses and the weight or probative force of testimony is for the [trier of fact] to judge and determine."'"Johnson v. State, 555 So.2d 818, 820
(Ala.Crim.App. 1989), quoting Harris v. State,513 So.2d 79, 81 (Ala.Crim.App. 1987), quoting in turn Byrd v.State, 24 Ala.App. 451, 136 So. 431 (1931). "We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial." Johnson,555 So.2d at 820. "`When the jury has passed on the credibility of evidence tending to establish the defendant's guilt, this Court cannot disturb its finding.'" Rowell v. State,647 So.2d at 69, quoting Collins v. State, 412 So.2d 845,846 (Ala.Crim.App. 1982).
Section 13A-8-2, Ala. Code 1975, states that "[a] person commits the crime of theft of property if he or she . . . [k]nowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property." Section 13A-8-3 (a) states that "[t]he theft of property which exceeds two thousand five hundred dollars ($2,500) in value, or property of any value taken from the person of another, constitutes theft of property in the first degree."
At trial, the State offered the testimony of Larry Spencer and Roger Miller. Both men testified that Miller approached Spencer about obtaining a Kubota brand tractor. Spencer knew that Kimbrough stole tractors; he arranged for Miller to meet Kimbrough, and a tractor was procured. However, because the first tractor was too small, Miller requested a second tractor with four-wheel drive. Miller paid *Page 1182 
Spencer $2,000 to $2,500 for the first tractor and $2,500 for the second tractor.[3]
Kimbrough testified that he and Stoinski stole the tractors from ARC Rental Center and the work site at Townsend Ford. Kimbrough testified that after stealing the tractors, the pair transported the tractors to Miller's property in Shelby County. Kimbrough stated that he paid Stoinski a total of $1,500 from the money Spencer paid him for the tractors.
Through the testimony of Rick Price, the State proved that the Kubota brand tractor stolen from ARC Rental Center had been purchased for $11,000 to $12,000 and that the remainder of equipment stolen from the business was worth approximately $1,500. Through the testimony of Phillip Hudson, the State proved that the Kubota brand tractor stolen from the Townsend Ford job site was purchased for $15,000. Hudson was reimbursed only $11,000 by the insurance company, and Hudson's total replacement cost was $19,000. Because there was ample evidence indicating that the property Stoinski stole included two tractors that were worth in excess of $2,500, the State presented sufficient evidence to support two counts of first-degree theft of property.
Regarding Stoinski's claim that the accomplice testimony was not corroborated, his contention is without merit. The witnesses connecting Stoinski to the thefts were Michael Kimbrough and Kristal Barger. The State conceded that Kimbrough and two other men were accomplices/coconspirators. However, the evidence does not support Stoinski's claim that Barger was also an accomplice as a matter of law. Barger denied any involvement in the theft, and she received no money from the thefts. Kimbrough's testimony confirmed that Barger, who was intoxicated the night the first tractor was stolen from ARC Rental, was "just along for the ride" and took no part in the thefts. Thus, the question of Barger's complicity was properly left for the jury's determination. See Gavin v. State,891 So.2d 907, 975 (Ala.Crim.App. 2003). Thus, Barger's testimony could be used to corroborate the accomplice testimony.
 "`"The test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense." Tarver v. State, 500 So.2d 1232 (Ala.Cr.App. 1986), affirmed, 500 So.2d 1256 (Ala. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987), citing, Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973) (emphasis supplied).' Garrison v. State, 520 So.2d 219 (Ala.Cr.App. 1987) (wherein accomplice testimony was sufficiently corroborated by a witness who testified that, prior to the incident, he overheard a conversation in which the appellant discussed plans for a burglary)."
Patterson v. State, 538 So.2d 44, 45
(Ala.Crim.App. 1988).
"Corroboration need only be slight to suffice." Ingle v.State, 400 So.2d 938, 940 (Ala.Crim.App. 1981). "Whether such corroborative evidence exists is a question of law to be resolved by the trial court, its probative force and sufficiency being questions for the jury." Caldwell v. State,418 So.2d 168, 170 (Ala.Crim.App. 1981). Kristal Barger's testimony sufficiently *Page 1183 
corroborated Kimbrough's testimony and therefore, connected Stoinski to the offense. Barger testified that she saw Stoinski and Kimbrough steal the Kubota brand tractor from ARC Rental Center and take it to Shelby County. Further, she testified that she was with Kimbrough when he went to Townsend Ford to check a Kubota brand tractor at the work site and that she heard a conversation between Stoinski and Kimbrough about stealing the Kubota brand tractor from Townsend Ford and taking it to Shelby County. Barger testified that Larry Spencer paid Kimbrough for stealing the tractors. Therefore, the trial court properly denied Stoinski's motions for judgment of acquittal because there was evidence from which the jury could find that Barger was not an accomplice and that her testimony sufficiently corroborated the accomplice testimony presented at trial.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, SHAW, and WISE, JJ., concur.
[1] Stoinski was charged in a six-count indictment. Counts I and II charged him with first-degree receiving stolen property; Counts III and IV charged him with first-degree theft of property; and Counts V and VI charged him with criminal conspiracy to commit first-degree theft of property. At the close of the State's case, the trial court granted Stoinski's motion for a judgment of acquittal as to Counts V and VI; thus, those charges were not submitted to the jury. The jury returned guilty verdicts against Stoinski on Counts IIV; however, the trial court set aside the jury's verdict as to Count II because it concluded that the conviction was based on uncorroborated accomplice testimony.
[2] The amount Spencer paid Kimbrough for the second tractor appears to be in question.
[3] As previously noted, the amount Spencer paid Kimbrough for the second tractor is disputed. According to Kimbrough, Spencer paid him $1,500 for the second tractor. However, Spencer claimed he paid Kimbrough $2,500 for the second tractor.
 *Page 401